**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BRUCE A. KUSHNICK<br>185 Marine Avenue<br>Brooklyn, New York, 11209<br>__________________<br><br>Plaintiff,<br><br>**FEDERAL COMMUNICATIONS COMMISSION**<br>445 12th Street, S.W.<br>Washington, D.C. 20554<br><br>Defendant. | ) | Civil Action<br>Docket No. ___________<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF** |

1. Bruce A. Kushnick ("Kushnick" or "Plaintiff") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, for injunctive and other appropriate relief to enforce his right to prompt disclosure of government agency records. Plaintiff seeks the release of records requested from the Federal Communications Commission ("FCC" or "Defendant") concerning the FCC's Enforcement Bureau's investigation of Cellco Partnership's d/b/a Verizon Wireless ("Verizon Wireless") improper billing of its customers for third-party products and services that the customers did not authorize, a practice known as cramming.

**PARTIES**

2. Kushnick is Executive Director of New Networks Institute and is a journalist specializing in telecommunications related issues.[1] Since 2012 Plaintiff has published approximately 100 articles in the Huffington Post. Kushnick has also published articles in the

---

[1] New Networks Institute, founded in 1992 as a market research firm focusing on the public interest, gathers and

Inbound-Outbound, Teleprofessional, Harvard Nieman Watchdog and Alternet. All of the articles for these publications of general circulation were written for the purpose of informing the public of developments in telecommunications, many of which concerned proceedings before the FCC and state agencies regulating telecommunications. Plaintiff's FOIA request is relevant to his work as a journalist.

3. Defendant, FCC is an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

**FACTUAL ALLEGATIONS**

6. Verizon Communications Inc. ("Verizon") is a holding company with two reportable segments, wireless and wireline. This Complaint addresses only the wireless segment of Verizon's business, which is provided primarily through Verizon Wireless. Verizon Wireless is the largest wireless service provider in the United States. Verizon Wireless as of December 31, 2014 had 108.2 million customers and 2014 revenues of approximately $87.6 billion, representing approximately 69% of Verizon's aggregate revenues.

7. On May 12, 2015, the Enforcement Bureau ("Bureau") of the FCC and Verizon Wireless entered into a Consent Decree as part of a settlement in which Verizon Wireless agreed to pay up to $70,000,000 in restitution to consumers who were charged for unauthorized third party services, $16,000,000 to the states participating in the settlement and $4,000,000 in fines to

the U.S. Treasury. The Consent Decree ostensibly resolved allegations that Verizon Wireless unlawfully charged consumers for third-party products and services that the consumers did not authorize, a practice that is more commonly known as cramming.

8. Verizon Wireless provides mobile voice and data services to consumers throughout the United States. Verizon Wireless bills its customers not only for its own voice and data services, but also for the products and services of third parties. From sometime in 2009 and until at least January 2014, Verizon Wireless included charges for third-party Premium Short Message Services (PSMS) on its customers' mobile phone bills. PSMS charges included services such as monthly subscriptions for ringtones, wallpapers, and text messages providing horoscopes, flirting tips, celebrity gossip, and other information. The charge for these types of subscriptions ranged from $0.99 to $14.00, but typically was $9.99 per month. As compensation for its services, Verizon Wireless retained 30% or more of each PSMS charge that it billed. In a Public Notice released the same day as the Consent Decree, FCC Chairman Wheeler referred to cramming as a fraudulent practice.

9. Verizon Wireless's practices generated numerous complaints from consumers who stated that they never authorized the PSMS charges that showed up on their bills. According to the FCC’s Enforcement Bureau, in just eight months in 2013 to 2014, Verizon Wireless billed tens of thousands of PSMS charges to customers who complained that they had never requested or authorized the services for which they were charged. Customers complained that Verizon Wireless refused to refund the charges or refunded charges for only a few months. Verizon Wireless’s policy was to offer only a 3-month refund. If the customer escalated the complaint within Verizon Wireless, a refund of up to a year was possible. The only hope that customers had for a full refund was to file a complaint with the FCC or another governmental authority

alleging that Verizon Wireless billed them for third-party charges they did not authorize. No doubt tens of thousands of customers failed to notice the charges on their bills, did not bother to deal with the company or the government bureaucracy, or simply took the offered 3-month refund. The Consent Decree does not state how many of Verizon Wireless's customers were overcharged. The Consent Decree does not obligate Verizon Wireless to make a full refund, but instead places a cap of $70,000,000 on the amount of money Verizon Wireless is obligated to return to its defrauded customers.

10. Section 201(b) of the Communications Act, 47 U.S.C. § 201(b) states, in pertinent part, that "[a]ll charges, practices, classifications, and regulations for and in connection with [interstate or foreign] communication service [by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful . . . ." The FCC has found that the inclusion of unauthorized charges and fees on consumers' telephone bills is an "unjust and unreasonable" practice under Section 201(b). The Enforcement Bureau charged that Verizon Wireless violated Section 201(b) of the Act by assessing charges on its customers' telephone bills for products or services they had not authorized.

11. Verizon Wireless's violations of the Communications Act are far from an isolated incident. Verizon Wireless has a long and troubling history of violating the Communications Act and FCC regulations, at the expense of consumers.

12. The FCC's Enforcement Bureau has no authority to issue a forfeiture in excess of $100,000, 47 C.F.R. § 0.311. In this case, the FCC was obligated to either issue a Notice of Liability for Forfeiture, 47 U.S.C. § 503, or designate the matter for hearing, 47 U.S.C. § 312. In either case the FCC would have been legally required to issue an order that set forth, with

particularity, the facts concerning Verizon Wireless's participation in the multiyear cramming fraud. Instead of issuing a Notice of Liability or setting the matter for hearing, as the FCC was required to do, the FCC permitted the Enforcement Bureau to reach a private settlement with Verizon Wireless. Thus, the Consent Decree states that it "is for settlement purposes only and does not constitute an adjudication on the merits or a factual or legal determination regarding compliance or non-compliance." The document contains a paucity of information as to the actions of Verizon Wireless and its knowledge and culpability in passing on fraudulent cramming charges to its customers. The public has been left in the dark as to the extent of the overcharges and whether the agreed upon refund fairly compensates the customers Verizon Wireless defrauded.

13. Plaintiff alleges that the private settlement between the FCC and Verizon Wireless, and the subsequent wrongful withholding of documents requested by Plaintiff under the FOIA, allowed Verizon Wireless to conceal evidence from the public of the full extent of its wrongdoings, including the full extent of the fraudulent charges it collected and, presumably, was permitted to keep.

Plaintiff's FOIA Request

14. On May 27, 2015, the Plaintiff, seeking information on the cramming investigation and settlement, wrote to the Enforcement Bureau requesting: 1. All documents reviewed or generated by the FCC. This includes, but is not limited to all documents provided by third parties; 2. All documents provided by Verizon Wireless to the FCC; and 3. All documents sent or provided by the FCC to Verizon Wireless. Plaintiff also filed a declaration in which he stated that he qualifies as a representative of the news media as set forth in 47 CFR

§0.470 (a)(2), and in which he certified pursuant to 47 CFR § 0.470 (c) that he will not use this information to further his own commercial interests.

15. In addition, Plaintiff requested that the FCC in preparing its response: (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption.

16. On June 3, 2015, the FCC sent Verizon Wireless a letter notification of Plaintiff's FOIA request, giving the carrier an opportunity to respond.

17. On June 15, 2015, Verizon Wireless responded to the FCC letter. Verizon identified three categories of documents, (1) those documents it had no objection to disclosing (2) those documents that should be withheld in their entirety; and (3) those documents it needs additional time to review.

18. By letter dated July 13, 2015, the FCC released documents with Verizon's redactions totaling 1,172 pages, which were primarily those documents that Verizon Wireless did not object to disclosing. Generally, the documents are: (1) cramming complaints filed against Verizon Wireless with the FCC and FTC; (2) Verizon Wireless sample bills and best practices documents; (3) legal documents, including court complaints filed against Verizon Wireless.

19. On September 30, 2015, the FCC stated that it had completed its review and found an additional 14,981 pages that were responsive to Plaintiff's request. This page count does not include FCC internal documents, which the FCC claims it does not have an obligation to identify or produce. The FCC however, only released an additional 588 pages of documents. Generally, these were additional documents Verizon Wireless agreed to disclose with redactions. The FCC stated that it was withholding 14,355 pages, plus an unspecified number of FCC internal documents.

20. On October 9, 2015, the FCC released an additional 28 pages.

21. The redacted documents include redactions of material that is available to the public. For example, the FCC, in many documents, but not all, redacted the PSMS subscription fees. Yet in the Order adopting the Consent Decree the Enforcement Bureau states: “The charge for these types of subscriptions ranged from $0.99 to $14.00, but typically was $9.99 per month.” The production is generally inconsistent with some information redacted in some documents and not redacted in others. There is no clear explanation of why information is redacted and why documents are not produced.

22. The FCC’s response to Plaintiff’s FOIA request does not include an itemized list of documents withheld, the statutory exemption claimed or a detailed explanation of why a document was withheld. Instead the FCC relies on general categories. For example, the FCC claims it can withhold its two Letters of Inquiry based on FOIA Exemption 7(A). Other withheld documents are just not identified. The only explanation given by the FCC for withholding the Letters of Inquiry and other documents it generated is contained in its July 13, 2015 letter to Plaintiff:

> In our search, we also located internal and investigative documents responsive to your request. These records contain FCC analysts' and attorneys' research, communications, and related investigative material. These records were created or compiled as part of the government's investigation into possible violations of the Communications Act of 1934, as amended (Act) and the Commission's rules. We are therefore withholding them from disclosure pursuant to FOIA Exemption 5 and Section 0.457(e) of the Commission's rules, which authorizes withholding certain inter-agency and intra-agency memorandums or letters. In addition, we are withholding these records pursuant to Section 0.457(g)(1) of the Commission's rules" and FOIA Exemption 7(A)," both of which authorize withholding investigative material or information compiled for law enforcement purposes if its production would reasonably be expected to interfere with current or future enforcement proceedings. Disclosure of these records would (1) hinder the agency's ability to control or shape its investigations; (2) enable persons or entities

> with relevant information to destroy or alter evidence; and (3) reveal evidence or strategy in the investigation.
>
> Finally, we find that our internal and investigative documents are exempt from disclosure under FOIA Exemption 7(E) and Section 0.457(g)(5) of the Commission's rules. Pursuant to Exemption 7(E) and Section 0.457(g)(5), materials that would disclose law enforcement investigation techniques and procedures, investigative guidelines, or could reasonably be expected to risk circumvention of the law, are exempt from disclosure.

23. The foregoing summary FCC response is plainly inadequate under FOIA standards as interpreted by the courts. Apart from its failure to itemize withheld documents or segregate exempt and non-exempt material, the FCC's assertion of exemptions cannot withstand scrutiny. The Enforcement Bureau conducts its investigations using procedures that are well known throughout the industry. It typically sends letters of inquiry to a carrier under investigation and, after reviewing the carrier's responses, sends follow up questions and data requests. In the past the FCC has made letters of inquiry and the responses thereto public. There is no indication that the Verizon cramming investigation was a special case involving innovative law enforcement techniques that would allow other carriers to avoid accountability for their misdeeds.

24. This case parallels a 2010 FOIA request, filed by the law firm of Smithwick & Belendiuk P.C., in which the Enforcement Bureau withheld or heavily redacted, among other things, its letters of inquiry in the investigation of $1.99 data charges that Verizon Wireless wrongfully billed to 15 million customers. The firm filed an appeal of the Enforcement Bureau's decision with the FCC, which the agency did not act upon in approximately a year and a half, save some minor additional disclosure. The FCC's inaction forced Smithwick & Belendiuk to file a complaint with this Court that finally resulted in the voluntary disclosure of essentially everything the firm had sought in its initial request. Civil Action No. 12-cv-891 (RBW). The

only plausible explanation of the FCC's conduct in these cases is that it is seeking to shield the details of its investigation to prevent the public from evaluating Verizon's wrongful activities and the reasonableness of the settlements.

25. In its response to the FCC, Verizon Wireless did identify some documents, but only in the broadest, most general terms. For example, in its list of hundreds of documents that Verizon Wireless Claims are confidential and therefore exempt from disclosure Verizon Wireless lists "Verizon KPI Reports" and claims it subject to "Ex 4 – VzW's internal policies." No additional information is provided concerning this document. Most if not all of Verizon's list of documents is equally unintelligible. Of the documents on Verizon Wireless's list of exempt documents, the FCC did not require Verizon Wireless to disclose a single page of a single document.

26. Even when Verizon had no objection to the disclosure of documents, the FCC, without explanation, did not disclose certain documents. The FCC did not explain why these documents were not disclosed.

27. The FCC has not acted and has exceeded the generally applicable twenty-day deadline for the processing of a FOIA request. 5 U.S.C. § 552(a)(6)(A)(ii). Plaintiff has exhausted all applicable administrative remedies with respect to the FCC's wrongful withholding of the requested records. 5 U.S.C. § 552(a)(6)(C)(i).

## CAUSE OF ACTION

Violation of the Freedom of Information Act
for Wrongful Withholding of Agency Records

28. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 27 above, inclusive.

29. Defendant has wrongfully withheld agency records requested by Plaintiff by failing to comply with the statutory time limit for the processing of FOIA requests. 5 U.S.C. §552(a)(6)(A)(i) and by its wrongful assertion of FOIA exemptions.

30. Plaintiff is entitled to an order requiring the immediate processing and release of the requested documents. 5 U.S.C. § 552(a)(4)(B).

**REQUESTED RELIEF**

WHEREFORE, Plaintiff prays that this Court:

A. Order Defendants to process immediately the requested records in their entirety and make copies available to Plaintiff;

B. Provide for expeditious proceedings in this action pursuant to 28 U.S.C. §1657(a);

C. Enjoin the FCC from its pattern of wrongfully withholding letters of inquiry and carrier responses thereto in Enforcement Bureau investigations;

D. Award Plaintiff costs and reasonable attorneys fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and,

E. Grant such other relief as the Court may deem just and proper.

Respectfully submitted

By: ______________________________

Arthur V. Belendiuk
D.C. Bar No. 336768
Smithwick & Belendiuk, P.C.
5028 Wisconsin Avenue, N.W., #301
Washington, D.C. 20016
(202) 363-4559

DATED: December 22, 2015